UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| XAVIER BRADFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV1234 LMB |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of Xavier Bradford for Supplemental Security Income under Title XVI of the Social Security Act.  This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).  Plaintiff filed a Brief in support of the Complaint.  (Doc. No. 14).  Defendant filed a Brief in Support of the Answer.  (Doc. No. 19).

## Procedural History

On December 15, 2009, plaintiff filed an application for Supplemental Security Income, claiming that he became unable to work due to his disabling condition on January 8, 1991.  (Tr. 107-13).  This claim was denied initially and, following an administrative hearing, plaintiff's claim

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

was denied in a written opinion by an Administrative Law Judge (ALJ), dated March 11, 2011. (Tr. 52-57, 13-25). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 6, 2012. (Tr. 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A. ALJ Hearing

Plaintiff's administrative hearing was held on March 1, 2011. (Tr. 31). Plaintiff was present and was represented by counsel. (Id.). Also present was vocational expert Michael McKeeman. (Id.).

Plaintiff's attorney stated that the record was complete. (Tr. 32).

Plaintiff's attorney examined plaintiff, who testified that he was initially denied benefits because he failed to attend a consultative examination. (Tr. 34). Plaintiff stated that he did not attend the examination because he did not have transportation. (Id.). Plaintiff explained that he lived in a dormitory in Jefferson City, Missouri, and the examination was scheduled to take place in Columbia, Missouri. (Id.).

Plaintiff testified that he has never been able to drive. (Id.). Plaintiff stated that he takes the train to school. (Id.). Plaintiff testified that taking the train is a task because he carries bags with him. (Id.). Plaintiff stated that he requires special accommodations to get on and off the train. (Tr. 35). Plaintiff testified that someone helps him with his bags. (Id.).

Plaintiff stated that he was taking twelve hours of college classes at the time of the hearing. (Id.). Plaintiff testified that he receives special accommodations at school. (Id.).

Plaintiff stated that he leaves class early and occasionally arrives late because he walks slowly. (Id.). Plaintiff testified that he has undergone surgery on his legs and he has some water on his knees. (Id.). Plaintiff stated that he has a motorized scooter, but he has not been using it because he is unable to afford a battery for it. (Id.). Plaintiff testified that he takes the lift in some of the school's buildings. (Id.). Plaintiff stated that he occasionally places an object under his feet when he sits at a desk because it can be uncomfortable for his legs to dangle. (Tr. 36). Plaintiff testified that he sometimes gets a different chair for his back because he has scoliosis.[2] (Id.).

Plaintiff testified that he is able to stand for five to ten minutes before he becomes uncomfortable. (Id.). Plaintiff stated that his legs and low back bother him when he stands for long periods. (Id.).

Plaintiff testified that he also has problems with his knees. (Id.). Plaintiff stated that his legs and back are occasionally stiff when he wakes in the morning. (Id.). Plaintiff testified that, when this occurs, he waits a minute before he gets up, and he stretches. (Id.).

Plaintiff testified that he received treatment at Shriners Hospital for many years. (Tr. 37). Plaintiff stated that he underwent surgery to correct bow legs. (Id.). Plaintiff testified that he considered a leg lengthening procedure. (Id.). Plaintiff stated that the surgery was not recommended because his knees are too damaged with water. (Id.).

Plaintiff testified that walking is sometimes difficult for him. (Id.). Plaintiff stated that he gets tired easily. (Id.). Plaintiff testified that it is difficult for him to walk in a straight line because he is pigeon toed. (Tr. 38). Plaintiff stated that his walk looks like a waddle. (Id.).

---

[2]Abnormal lateral and rotational curvature of the vertebral column. Stedman's Medical Dictionary, 1734 (28th Ed. 2006).

Plaintiff testified that he does not have much strength in his hands. (Id.). Plaintiff stated that he is able to pick up and manipulate small objects. (Id.).

Plaintiff testified that he attended North County Technical School prior to attending the college he was attending at the time of the hearing. (Id.). Plaintiff stated that a teacher at the technical school helped him with some things, such as placing objects under his feet when his feet dangled. (Tr. 39).

Plaintiff testified that he did not require any special tutoring when he was in high school. (Id.). Plaintiff stated that he received accommodations for extended time due to the difficulties he experienced getting from classroom to classroom. (Id.).

Plaintiff testified that his biggest challenge affecting his ability to work is his height. (Id.). Plaintiff stated that it would be hazardous for him to work in a restaurant due to his height. (Tr. 40). Plaintiff testified that, in an office environment, his biggest problem would be getting to work. (Id.).

Plaintiff stated that he has difficulty being in crowds because people are unable to see him and he fears being trampled. (Id.).

Plaintiff testified that he has no difficulties taking care of himself as far as bathing and dressing. (Id.). Plaintiff stated that he is able to get to the dining hall but he needs help getting drinks due to the height of the soda machine. (Tr. 41).

Plaintiff testified that he was not receiving any medical care at the time of the hearing. (Id.). Plaintiff stated that he lost his eligibility to receive services at Shriners Hospital when he turned eighteen. (Id.).

Plaintiff testified that he was experiencing some pain in his lower extremities and his back.

(Id.).  Plaintiff stated that he sits down and rests for a minute if he experiences pain when walking. (Id.).

Plaintiff testified that he experiences back pain if he sits without resting his back due to his scoliosis.  (Id.).  Plaintiff stated that he underwent x-rays at Shriners to diagnose the scoliosis. (Id.).

Plaintiff testified that his chest bone is protruding.  (Id.).  Plaintiff stated that he occasionally experiences discomfort due to this impairment if he sleeps on it a certain way.  (Tr. 43).

Plaintiff testified that he is able to walk down steps but he walks slowly and tiptoes.  (Tr. 43).  Plaintiff stated that he sometimes has difficulty reaching the railing.  (Id.).  Plaintiff testified that he generally requires either a stair lift or an elevator.  (Id.).

The ALJ examined plaintiff, who testified that he was attending Lincoln University at the time of the hearing, and that he was doing "pretty well."  (Tr. 44).  Plaintiff described himself as a "pretty good" student.  (Id.).  Plaintiff stated that he was in the second semester of his sophomore year.  (Id.).  Plaintiff testified that he walks about twenty-five feet from his dorm to the building where his classes are held.  (Id.).  Plaintiff stated that all of his classes are in two buildings, which are located right next to each other.  (Id.).  Plaintiff testified that the library is also only twenty to thirty feet from his dorm.  (Tr. 45).  Plaintiff explained that his dorm is located in the center of campus.  (Id.).

Plaintiff stated that he is only able to stand for five to ten minutes because his legs and lower back get tired.  (Id.).  Plaintiff testified that he is able to walk twenty-five to thirty-four feet before he has to rest.  (Id.).  Plaintiff stated that he is able to lift five to eight pounds.  (Id.).

Plaintiff testified that he has difficulty reaching items that are located on a standard-sized counter. (Tr. 46).

The ALJ examined the vocational expert, Michael McKeeman, who testified that plaintiff has no past work history. (Id.).

The ALJ asked Mr. McKeeman to assume a hypothetical claimant with plaintiff's background and the following limitations: capable of performing light work; and should avoid all exposure to operational control of moving machinery when that machinery is set at a standard height in terms of the foot pedals. (Id.). Mr. McKeeman testified that the individual could perform a fairly wide range of unskilled work, such as sedentary bookkeeping work (2,500 positions in Missouri); receptionist (2,000 sedentary positions in Missouri; 1,000 light positions); and office clerk (3,600 light positions available in Missouri; 2,000 sedentary positions). (Tr. 47).

The ALJ next asked Mr. McKeeman to assume the same limitations as the first hypothetical, but the individual could occasionally climb ladders, ropes or scaffolds; and occasionally climb ramps or stairs. (Tr. 48). Mr. McKeeman testified that the jobs he mentioned previously would remain. (Id.).

The ALJ asked Mr. McKeeman to assume the limitations from the second hypothetical with the following additional limitations: occasionally grossly manipulate objects bilaterally with his hands due to lack of strength in the hands; and never operate foot controls when those foot controls were set to standard height. (Id.). Mr. McKeeman testified that the numbers of the jobs he mentioned could be affected, but there would be a significant number left. (Id.).

Finally, the ALJ asked Mr. McKeeman to assume the same limitations as the third hypothetical, but the individual would be capable of less-than-sedentary work on less-than-an-

- 6 -

eight-hour-a-day basis. (Tr. 49). Mr. McKeeman testified that the individual would be unable to hold a full-time job. (Id.).

Plaintiff's attorney asked Mr. McKeeman to assume the following limitations: work sites required to be within twenty-five feet of each other and within twenty-five feet of a transportation drop off point; extended time required to get from one station to another; work site would require a chair lift or elevators; and more than three tardies and three absences per month were necessary. (Tr. 49-50). Mr. McKeeman testified that the individual would be unable to hold a job. (Tr. 50).

### B.  Relevant Medical and School Records

On September 14, 2005, when plaintiff was in the ninth grade, a Student Accommodation Plan was developed for plaintiff by a team consisting of plaintiff's counselor, teacher, assistant principal, and mother. (Tr. 128-30). It was noted that plaintiff's dwarfism affected a major life activity as follows: fatigue in walking long distances, fear of being trampled in large crowds, and inability to always open doors or use bathrooms. (Tr. 129). The following accommodations were agreed upon on September 14, 2005: all classes were scheduled as close together as possible; extended time between classes, at lunch, and at the end of the day (ten minutes) was given; a step stool was secured for personal bathroom use; a locker close to classes was assigned; a bus carried his scooter and took him door to door; and plaintiff did not have to go to the cafeteria at lunch during inclement weather. (Tr. 128).

Plaintiff underwent a chest x-ray on February 26, 2007, which revealed a marked pectus carinatum[3] with outward bowing of the lower sternum. (Tr. 178). There was a prominence

---

[3]Flattening of the chest on either side with forward projection of the sternum resembling the keel of a boat. Stedman's at 1446.

deformation in the process of the ends of the ribs. (Id.).

Plaintiff presented to Charles B. Huddleston, M.D. at Shriners Hospitals for Children ("Shriners") on February 26, 2007. (Tr. 177). Dr. Huddleston stated that plaintiff had a diagnosis of pseudoachondroplasia,[4] and that he was being seen because of a sternal mass. (Id.). Dr. Huddleston noted that plaintiff was seen at Shriners on a regular basis for his "primary bone disease." (Id.). Dr. Huddleston indicated that the sternal mass "popped up" a couple of years prior, and had been fairly stable since that time. (Id.). Plaintiff reported that it did not hurt him very much, although he does bump into things occasionally with it. (Id.). Upon examination, Dr. Huddleston stated that plaintiff was obviously a very short individual; his heart examination was normal; and chest x-rays confirmed a significant pectus carinatum deformity, which was moderately severe, if not severe. (Id.). Dr. Huddleston stated that there was an operation to repair the deformity, but he would have some concerns about performing any elective bone surgery on an individual with bone disease. (Id.). Dr. Huddleston indicated that he could proceed with surgery if it bothered plaintiff enough, but plaintiff reported that he was not interested in proceeding at that time, which Dr. Huddleston described as a "wise decision." (Id.).

Plaintiff also saw Margaret M. Rich at Shriners on February 26, 2007. (Tr. 176). Plaintiff reported that he was interested in lower extremity surgery to increase his height. (Tr. 176). Plaintiff reported concern about social attitudes towards people with short stature and difficulty with community activities. (Id.). Plaintiff had discussed driving with Recreational Therapy. (Id.). Ms. Rich indicated that plaintiff had rotation deformity, a lot of laxity through his knee, and was

---

[4]A skeletal dysplasia characterized by short-limb dwarfism with leg deformities associated with knee abnormalities and ligamentous laxity; normal appearing head and face. See Stedman's at 1587-88.

- 8 -

of markedly short stature. (Id.). Ms. Rich discussed lengthening with plaintiff, and indicated it would probably require multiple procedures. (Id.).

Plaintiff underwent x-rays of his bilateral knees on August 27, 2007, which revealed no change in the deformity of the ends of the long bones. (Tr. 180). Both knees were held in partial flexion with satisfactory alignment of the bones of the knee. (Id.).

Plaintiff presented to Sharon Nugent, ARNP, on August 22, 2007. (Tr. 179). Ms. Nugent indicated that plaintiff had seen Dr. Gordon for a first-time evaluation regarding limb lengthening. (Id.). Plaintiff was three-feet, five-and-a-half inches tall. (Id.). Ms. Nugent stated that Dr. Gordon reviewed plaintiff's x-rays and examined plaintiff, and found that plaintiff had a lot of anterior/posterior instability to his knee and subluxation.[5] (Id.). Dr. Gordon was concerned about performing the lengthening procedure and creating more subluxation and actually creating knee pain. (Id.). Dr. Gordon planned to discuss plaintiff's case with a colleague and get back to plaintiff. (Id.). Ms. Nugent indicated that plaintiff was having no other problems. (Id.).

In a letter dated February 9, 2010, Cynthia L. Washington, Coordinator of Disability Services at Lincoln University, advised faculty that plaintiff required the following accommodations: extended time on exams and written assignments, alternative testing site in a quiet room, ongoing consultation with instructors regarding academic performances, student support services for tutoring, stair lift as needed, adjustable tables, and living in an accessible dorm. (Tr. 154).

---

[5] An incomplete luxation or dislocation; although a relationship is altered, contact between joint surfaces remains. Stedman's at 1856.

## The ALJ's Determination

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since December 15, 2009, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the severe impairment of pseudochondroplasia (dwarfism) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can never engage in foot control operation, when foot controls are placed at standard height; can occasionally climb ladders, ropes and scaffolds; can occasionally climb ramps or stairs; can occasionally engage in gross manipulation of objects with both hands and should avoid all operational control of moving machinery when such machinery uses foot pedals placed at standard heights.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on January 8, 1991 and was 18 years old, which is defined as a younger individual age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 15, 2009, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18-22).

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income filed on December 15, 2009, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 22).

## Discussion

### A.   Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)(citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."  Id.

### B.   Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I)(1)(a); U.S.C. § 423 (d)(1)(a). The claimant has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his

or her past work.  <u>See</u> 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  <u>See id.</u>  If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience.  <u>See</u> 20 C.F.R. §§ 404.1520 (f), 416.920 (f).  The claimant is entitled to disability benefits only if s/he is not able to perform any other work.  <u>See id.</u>  Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work.  <u>See</u> <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  <u>See</u> 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2).  The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace.  <u>See</u> 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3).  Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-

related activities. See id. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. See id. If there is a severe impairment but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity assessment. See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

**C.     Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in failing to fully and fairly develop the record. Plaintiff next contends that the ALJ failed to properly consider plaintiff's credibility and RFC. Plaintiff finally argues that the testimony of the vocational expert did not provide substantial evidence to support a finding of not disabled. The undersigned will discuss plaintiff's claims in turn, beginning with the ALJ's credibility analysis and RFC determination.

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and

intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions.  Polaski, 739 F.2d at 1322.  See also Burress, 141 F.3d at 880; 20 C.F.R. § 416.929.  The determination of a plaintiff's credibility is for the Commissioner, and not the Court, to make.  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting [a claimant's] subjective complaints."  Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011).

      The ALJ properly pointed out Polaski factors and other inconsistencies in the record as a whole that detract from plaintiff's complaints of disabling pain.  The ALJ first discussed the medical evidence, and found that plaintiff's complaints were not supported by the medical record.  (Tr. 19-20).  Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility.  See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

      The ALJ noted that plaintiff's allegations of scoliosis and water on the knees are unsupported by the medical record.  (Tr. 20).  The ALJ pointed out that plaintiff has received minimal medical treatment for his pseudoachondroplasia.  (Tr. 19).  Plaintiff was seen at Shriners for a pectus carinatum deformity in February 2007, and decided not to proceed with surgery.  (Tr. 19, 177).  Plaintiff reported that the deformity was not very painful, although he occasionally bumped into things with it.  (Id.).  Plaintiff presented to Shriners to discuss limb lengthening surgery in August 2007.  (Tr. 179).  It was noted that plaintiff had knee instability and subluxation.  (Id.).  Plaintiff reported no other problems.  (Id.).

The ALJ noted that plaintiff has sought no medical treatment since he turned eighteen and was no longer eligible to receive treatment at Shriners. (Tr. 20). The failure to seek regular medical treatment detracts against a claimant's credibility. See Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007). Plaintiff has provided no evidence that he was denied medical treatment due to an inability to afford care. See Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992) (rejecting claim of financial hardship in case where there was not evidence that claimant had attempted to obtain low cost medical treatment or had been denied care because of inability to pay).

The ALJ pointed out that no physician has ever imposed any limitations on plaintiff. (Tr. 20). The presence or absence of functional limitations is an appropriate Polaski factor, and "[t]he lack of physical restrictions militates against a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999)(citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).

The ALJ discussed plaintiff's daily activities. (Tr. 19). The ALJ pointed out that plaintiff lives in a college dormitory, attends college full-time, and describes himself as a "pretty good" student. (Tr. 19, 44). Plaintiff also reported that he performed household chores, shops, and plays video games. (Tr. 19, 145-47). Significant daily activities may be inconsistent with claims of disabling pain. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001). See also Tennant v. Apfel, 224 F.3d 869, 870 (8th Cir. 2000) (part-time college attendance inconsistent with allegations of disabling pain and fatigue). The ALJ properly found that plaintiff's activities, particularly his ability to attend college full-time, were inconsistent with allegations of disabling impairments.

An administrative opinion must establish that the ALJ considered the appropriate factors.

- 16 -

See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for finding that plaintiff's complaints are not entirely credible is supported by substantial evidence.

> The ALJ made the following determination regarding plaintiff's RFC:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can never engage in foot control operation, when foot controls are placed at standard height; can occasionally climb ladders, ropes and scaffolds; can occasionally climb ramps or stairs; can occasionally engage in gross manipulation of objects with both hands and should avoid all operational control of moving machinery when such machinery uses foot pedals placed at standard heights.

(Tr. 18).

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545. While the formulation of RFC is a medical question, Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000), it is based on all the relevant, credible evidence of record including the medical records, observations of treating physicians and others, and an individual's own description of limitations. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003).

Substantial evidence exists in the record to support the ALJ's RFC determination. In determining plaintiff's RFC, the ALJ considered the objective medical evidence of record. This evidence revealed that plaintiff suffered from pseudochondroplasia, but had few complaints and

received little treatment.  The ALJ also performed a proper credibility analysis and found that plaintiff's allegations were not entirely credible.  Significantly, plaintiff was receiving no medical treatment at the time of the hearing, took no pain medication, and was able to attend college full-time with minimal accommodations.  The ALJ nonetheless credited many of plaintiff's subjective complaints in limiting plaintiff to sedentary work with no use of foot controls, and limited use of his hands.  The ALJ adequately accounted for limitations resulting from plaintiff's pseudochondroplasia.  The record does not support the presence of any greater limitations than those found by the ALJ.  Thus, the ALJ's determination is supported by substantial evidence in the record as a whole.

Plaintiff also contends that the ALJ failed to fully and fairly develop the record.  Specifically, plaintiff argues that the ALJ should have ordered a consultative examination, and that plaintiff had good cause for failing to attend a consultative examination previously scheduled by the state agency.

"The ALJ's duty to develop the record exists independent of the claimant's burden in the case."  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).  This duty includes the ordering of a consultative examination when such an evaluation is necessary for an informed decision.  Haley, 258 F.3d at 749.  The ALJ need not order a consultative examination if the record contains substantial evidence to support the ALJ's decision.  Id.

In this case, the record contains sufficient evidence from which the ALJ could make a determination.  As previously discussed, the evidence of record supports the ALJ's determination that plaintiff is capable of a limited range of sedentary work.  Further, plaintiff represented at the administrative hearing that the record was complete and did not request a consultative

examination.  (Tr. 32).  Thus, the ALJ did not err in failing to order a consultative examination after the hearing.

Plaintiff finally argues that the testimony of the vocational expert did not provide substantial evidence to support a finding of not disabled.

The vocational expert testified that an individual with the RFC found by the ALJ was capable of performing other sedentary work as a bookkeeper, receptionist, and office clerk.  (Tr. 47-49).  A vocational expert's testimony based on a properly phrased hypothetical constitutes substantial evidence.  Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999).

Accordingly, the vocational expert's testimony that there were jobs existing in significant numbers that plaintiff could perform constitutes substantial evidence supporting the ALJ's determination.

## Conclusion

Substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a disabling impairment.  Accordingly, Judgment will be entered separately in favor of defendant in accordance with this Memorandum.

Dated this  23rd   day of September, 2013.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE